Filed 10/30/25  P. v. Jack CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100841 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE007741) |
| v. | |
| JEREMY MICHAEL JACK, | |
| Defendant and Appellant. | |

Defendant Jeremy Michael Jack was convicted of committing a lewd or lascivious act on a child under the age of 14.  The trial court imposed a five-year term of probation with conditions requiring Jack to consent to warrantless searches of his electronic storage devices and internet accounts and prohibiting his unchaperoned association with minors other than his son.  On appeal, Jack contends that the electronics search conditions should be stricken as unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) or, at a minimum, modified as unconstitutionally overbroad.  He also maintains that the association condition should be modified due to its overbreadth.  We find the electronics search conditions reasonable under *Lent*, but we accept the People's concession that they

1

are unconstitutionally overbroad. We see no constitutional infirmity in the association condition. We therefore remand the matter to the trial court to strike or modify the electronics search condition.

BACKGROUND

I.

In May 2021, police were dispatched to Jack's residence after his older son reported that Jack had molested the victim, Jack's younger son, who was then 13 years old. When police arrived, Jack acknowledged having "slightly molested" the victim by touching his buttocks while cuddling him in bed. The victim told the police that he quickly got out of the bed and that, later that evening, Jack apologized and admitted having wanted to have sex with him at the time.

An amended information charged Jack with one count of committing a lewd or lascivious act on a child under age 14 (Pen. Code, § 288, subd. (a)).[1] It further alleged as an aggravating factor that Jack took advantage of a position of trust or confidence to commit the offense.

At trial, the jury heard evidence that Jack had been drinking alcohol continuously for at least one week leading up to the incident and was intoxicated and experiencing alcohol withdrawals when he originally spoke with police. Jack testified that he was "a binge drinker" and that he had no memory of his actions that night or of his original police interviews because he was "in a blackout state." He further testified that during binges he would sometimes try to talk with people through dating applications on his smartphone to try to distract himself enough to taper off drinking. Jack stated that he vaguely recalled using an app called Grindr on the night of the incident. Although he was aware that this app was commonly used for arranging sexual encounters, he would

---

[1] Undesignated statutory references are to the Penal Code.

use it for the purpose of nonsexual conversation with other users. Jack testified that, on the night of the incident, he was conversing with someone on Grindr, and when the conversation turned sexual, he ended it and returned to drinking. He then went into his bedroom to rest, not knowing the victim was asleep in the bed. Jack told the jury that he was not having sexual feelings following his Grindr conversation. The jury also heard Jack's recorded statements to police that he had touched the victim "[b]ecause [he] was sexually excited at the time," explaining that he was "sexually aroused" but his arousal was not directed toward the victim.

At trial, the victim, then age 15, denied that Jack had ever touched him inappropriately, stating that it was all a misunderstanding. Both the victim and his older brother, who was age 18 at the time of trial, testified that they had very good relationships with Jack. The victim stated that he wished to return to living primarily with Jack, as he had since his parents separated except for a few months after Jack's arrest and a short time preceding the trial.

Jack was convicted as charged, and the trial court found true the aggravating factor that he abused a position of trust in committing the offense.

## II.

Before sentencing, the trial court ordered a psychological evaluation of Jack pursuant to section 288.1. In February 2024, the psychologist submitted a report opining that Jack was not predisposed to commit sexual offenses, would not pose an elevated risk of danger to others, and was not unsuitable for probation because of mental health issues. The report included Jack's own narrative of the offense, in which he described turning to Grindr to find someone to talk to when his siblings were not available. Jack was quoted as stating: "I only wanted to chat to distract myself from drinking but people just want to have sex on those apps, but it had distracted me for about four or five hours from drinking. I thought maybe I can lie down and get some sleep. I was having a conversation with a guy on Grindr and he was being sexual so I was aroused." Jack then

3

described leaving the app, finding the victim asleep in Jack's room, and feeling the need to hold him for comfort. The psychologist opined that Jack's offense "was an impulsive act while acutely intoxicated by alcohol within the backdrop of his lacking a healthy intimate partnership and being primed for sexual arousal due to the sexual nature of the online chat with which he had been engaged immediately preceding the offense." She concluded that, if Jack were to reoffend, it would most likely occur "within the context of acute alcohol intoxication in combination with lack of an appropriate intimate partnership and spontaneous, or unplanned, contact with a victim." The probation department prepared a presentence report recommending that Jack be granted probation, subject to various conditions.

At the sentencing hearing, the trial court deemed Jack suitable for probation, finding that he was "not a danger to reoffend." The court found that Jack was not a danger to either the community or his family. The court allowed Jack peaceful contact with his sons, over the People's request for a criminal protective order. The court suspended imposition of a prison sentence and placed Jack on a five-year term of probation with 270 days in county jail.

The trial court imposed most of the probation conditions recommended in the presentence report, striking certain conditions, modifying others following discussion with the parties, and adding certain conditions. As relevant here, the court imposed the following conditions of probation:

Condition 3 required Jack to submit his "person, property and automobile and any object under [his] control to search and seizure" with or without a warrant at any time. At defense counsel's request, the trial court limited this condition to searches for alcohol and drugs and for whether any minor was present with Jack. The court declined the People's request to add to that list searches for any illegal sexual material, noting its concern about a "lack of nexus."

4

Condition 5 stated: "Defendant shall not associate with any minor under the age of eighteen (18) without an adult being present who has been approved by the Court. Defendant shall not knowingly communicate, either in writing or electronically with any minor under the age of eighteen (18) without the prior approval of the Court." At defense counsel's request, the trial court modified this condition to permit Jack's unsupervised association with the victim, who was then (as now) still under age 18. The prosecutor asked whether he was correct in understanding that this meant the victim could be in Jack's presence alone but "all other minors still need approval from the Court, or probation." The court and defense counsel confirmed that was their understanding.

Condition 9 stated: "Defendant shall disclose all e-mail accounts, all Internet accounts, and any other means of access to any computer or computer network, all passwords and access codes. Defendant shall consent to the search of such e-mail and Internet accounts at any time and the seizure of any information or data contained therein without a search warrant or probable cause." The trial court stated that this condition was being imposed "as part of [Jack's] sex offender management program," which he was required to complete as another condition of probation.

Condition 13 prohibited Jack from "knowingly engag[ing] in volunteer work involving minors without the permission of the probation officer or Court."

Finally, condition 16 required Jack to submit his "person, place, property, automobile, electronic storage devices, and any object under his[] control, including but not limited to cell phones and computers, to search and seizure by any law enforcement officer or probation officer, any time of the day or night, with or without a warrant, with or without his[] presence or further consent." This condition further stated that, by accepting probation, Jack "specifically consented to searches of his[] electronic storage devices" and was required to "provide access to any electronic storage devices and data contained therein, including disclosing and providing any and all information necessary to conduct a search."

Jack timely appealed.

DISCUSSION

Jack contends that the electronics search conditions contained in conditions 9 and 16 should be stricken because they are unreasonable under *Lent* or, at a minimum, modified as unconstitutionally overbroad. He also claims that condition 5, limiting his association with minors, should be modified due to its unconstitutional overbreadth.

Jack failed to object to, or request modification of, any of these conditions on the grounds now raised on appeal. He argues that his constitutional claims are nevertheless preserved for our review because they present pure questions of law; and to the extent objections were required, he asserts that his trial counsel was ineffective for failing to request to strike or modify the challenged conditions. The People state that they are not invoking forfeiture as to either set of claims so as to avoid Jack's alternative claim of ineffective assistance of counsel.

The failure to object to a probation condition as unreasonable under *Lent* generally forfeits the contention on appeal. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235, 237; *In re P.O.* (2016) 246 Cal.App.4th 288, 294.) And only facial constitutional challenges to a probation condition that are "capable of correction without reference to the particular sentencing record" are exempt from the general forfeiture rule. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887; see *id.* at p. 885.) While Jack's constitutional claims do not fit that description, we nevertheless exercise our discretion to consider the merits of both his *Lent* and constitutional claims in light of the People's concession and Jack's alternative contention that his trial counsel's failure to make an adequate objection constituted ineffective assistance. (See *People v. Mattson* (1990) 50 Cal.3d 826, 854 [considering issues not raised in trial court to forestall later claim of constitutionally inadequate representation]; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [appellate courts may reach unpreserved questions].)

6

We first address Jack's challenges to the electronics search requirements contained in conditions 9 and 16.

A trial court may impose any "reasonable conditions [of probation], as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).) In *People v. Lent*, our state high court determined that a condition of probation "will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) In applying the *Lent* test, we review the conditions imposed for abuse of discretion. (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118; *People v. Salvador* (2022) 83 Cal.App.5th 57, 62, 64.)

We find dispositive the first element of *Lent*'s test, which "asks whether the probation condition has *no* relationship to the conviction." (*People v. Patton* (2019) 41 Cal.App.5th 934, 945; see *Lent*, *supra*, 15 Cal.3d at p. 486.) Here, the record supports an implied finding that there was a relationship between the offense and Jack's use of an electronic device and the internet. Both the evidence at trial and the section 288.1 report reflect that Jack used his smartphone to engage in a conversation with someone on the Grindr application before entering his bedroom and lying down with the victim. Jack testified that, on previous occasions, he had turned to social media applications like Grindr to help him end periods of binge drinking. Jack's psychological evaluation and police interviews reflect that, on the night of the offense, Jack's Grindr conversation turned sexual and caused him to feel sexually aroused at the time he began holding the

victim.  Notably, the section 288.1 report found that Jack's offense was an impulsive act committed "within the backdrop of . . . being primed for sexual arousal due to the sexual nature of the online chat with which he had been engaged immediately preceding the offense."  Given these facts, we cannot say it was an abuse of discretion to impliedly find a relationship between Jack's use of electronic devices and the offense.  That is sufficient to reject Jack's claim under *Lent* because a "probation condition must trigger all three *Lent* factors to be invalid."  (*People v. Appleton* (2016) 245 Cal.App.4th 717, 719-720, 724 [electronics search condition reasonable, even while "somewhat attenuated" under *Lent*'s first prong, where defendant met victim via smartphone app several months before committing sex offense]; see also *People v. Salvador*, *supra*, 83 Cal.App.5th at pp. 63-64 [nexus between offenses and use of electronic devices somewhat attenuated "but not altogether absent" where defendant used cell phone to communicate with victims on social media, even though communications did not "facilitate[] his commission of the offenses"].)

Turning next to Jack's alternative argument that the electronics search conditions are unconstitutionally overbroad, we agree that they are not adequately tailored.  "If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' "  (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355.)  "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad."  (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement."  (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)  We review

8

constitutional overbreadth questions de novo. (*In re P.O.*, *supra*, 246 Cal.App.4th at p. 297.)

Jack objects to the portion of condition 16 permitting warrantless searches of his "electronic storage devices," including his cell phones and computers, and condition 9's required disclosure of "all e-mail accounts, all Internet accounts," and "all passwords and access codes." The People concede that these conditions "are not narrowly tailored to achieve their purpose," which is to ensure Jack's compliance with his sex offender management program and other terms of probation. We accept this concession. As written, these conditions permit searches of all manner of Jack's digital information, including, for example, health records and financial information lacking any connection to the purpose of the conditions. Given that broad sweep, we agree the electronics search requirements contained in conditions 9 and 16 are not sufficiently tailored. (See *In re P.O.*, *supra*, 246 Cal.App.4th at p. 298 [finding electronics search condition overbroad because it permitted "review of all sorts of private information that is highly unlikely to shed any light on whether [the juvenile was] complying with the other conditions of his probation, drug-related or otherwise"]; *People v. Appleton*, *supra*, 245 Cal.App.4th at pp. 719, 725 [finding overbroad condition that authorized "search[es] of [the] defendant's mobile electronic devices [that] could potentially expose a large volume of documents or data, much of which may have nothing to do with illegal activity," including "medical records, financial records, personal diaries, and intimate correspondence"].)

The People propose that we modify the electronics search conditions to require Jack to provide his social media accounts and passwords to the probation officer. We decline to order a specific revision and instead remand for the trial court to strike or modify the electronics search conditions and to consider their proper scope in the first instance. (See *People v. Bray* (2025) 112 Cal.App.5th 494, 503; *People v. Appleton*, *supra*, 245 Cal.App.4th at p. 727.)

9

## II.

Jack next contends that condition 5's limitation on his association with minors should be modified because it is an unconstitutionally overbroad infringement of his right of association. We review de novo whether this limitation is "closely tailor[ed]" to its purpose. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890; see *In re P.O.*, *supra*, 246 Cal.App.4th at p. 297.)

Condition 5 prohibits Jack's association "with any minor under the age of eighteen (18) without an adult being present who has been approved by the Court," except for Jack's minor son. (Condition 5 also prohibits Jack from knowingly *communicating* with minors under age 18 without prior court approval, but Jack does not challenge this part of the condition.) Jack argues that condition 5 is overbroad because, first, as the primary caregiver for his minor son (who was 16 years old at the time this appeal was taken), Jack will need to attend school activities and come in contact with his son's friends and, second, as a sign language interpreter by trade, he will sometimes be asked to interpret for a minor or group of minors. He argues that these types of associations do not present any risk to the public and may not involve advance notice, making the presence of a pre-approved chaperone "impractical." At the same time, Jack acknowledges that "some restriction" on his association with minors is warranted. Jack proposes modifying condition 5 to permit certain activities involving minors with his probation officer's permission rather than requiring a pre-approved chaperone, offering condition 13 as an example of this model. He suggests: "Normal parental and work activities can be described and approved, leaving only private one-on-one interactions with a minor subject to the chaperone requirement."

As to Jack's concern with this condition's impact on his ability to work as a sign language interpreter, the People question whether Jack is presently working in that capacity, and there is evidence in the record suggesting he is not. But even assuming Jack has constitutionally protected associational interests in both categories of

10

associations he asserts, a question his briefs do not address (see *Isbister v. Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72, 85 [Constitution protects " 'intimate' " and " 'expressive' " associational rights]), we discern no constitutional defect in condition 5. Given the circumstances of the offense, there is a legitimate purpose for restricting his unchaperoned access to minors, even those he encounters outside of his home.  While Jack emphasizes the trial court's finding that he is not a danger to the community or likely to reoffend, he nevertheless concedes that some restriction on his association with minors is warranted.

The chaperone requirement is also adequately tailored to that purpose.  (*In re E.O.*, *supra*, 188 Cal.App.4th at p. 1153 [perfection not required].)  It does not forbid associations altogether, but instead simply requires the presence of another adult as a means to prevent repetition of the type of conduct underlying Jack's offense.  Indeed, at least one court has suggested that this sort of chaperone condition is a more narrowly tailored condition than others that could be imposed when, like here, limits on a probationer's contact with minors are warranted.  (*People v. Bray*, *supra*, 112 Cal.App.5th at p. 503 [striking different condition and observing that there are "other more narrowly tailored conditions that could be imposed to serve the same purpose of protecting children, such as a requirement that [the defendant] not associate with minors unless a responsible adult approved by his probation officer is present"], citing *People v. Urke* (2011) 197 Cal.App.4th 766, 769, 775 [affirming revocation of probation based on violation of condition prohibiting association with minors without pre-approved responsible adult present].)

Jack likens the burden imposed by condition 5 to those identified in *United States v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082, where a probation condition prohibited a father, who had been convicted of attempted sexual abuse, from being in the company of minors without prior written approval from his probation officer.  (*Id.* at p. 1087.)  The United States Court of Appeals for the Ninth Circuit found the condition

11

overbroad, reasoning that it "effectively prohibit[ed] [the defendant] from acting as a responsible father to his own daughters. It require[d] him to obtain written permission before taking his daughter to a pediatrician; or meeting one of his daughter's boyfriends before allowing her to go on a date with him; or taking his children to places of worship or other tribal functions, or to family gatherings, or other social affairs." (*Id.* at p. 1101; see *id.* at p. 1102.) In contrast here, the challenged condition does not forbid associations without advance approval, but allows them, provided that an approved adult is present. And while Jack argues that he is required to "forfeit supervision of his son's social activities," he has not demonstrated, for example, that no chaperoning adults are available or that other particular barriers to satisfying the condition are present such that the condition operates to prevent him from participating in his son's life or other protected associations. We therefore reject Jack's challenge to condition 5.

DISPOSITION

We remand the matter to the trial court to strike or modify probation conditions 9 and 16 in accordance with this opinion. In all other respects, the judgment is affirmed.


                                          /s/
                                    FEINBERG, J.


We concur:


    /s/
RENNER, Acting P. J.


    /s/
KRAUSE, J.


12